UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY BANKS,

       Plaintiff,                                  Hon. Paul L. Maloney

v.                                                  Case No. 1:12-CV-1355

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and*

*Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 59 years of age on his alleged disability onset date. (Tr. 170). He successfully completed high school and worked previously as a machine operator, assembler, and painter/sprayer. (Tr. 20, 38, 214-18).

Plaintiff applied for benefits on January 7, 2011, alleging that he had been disabled since May 18, 2010, due to a back injury, anxiety, Crohn's disease, clostridium difficile, and colitis. (Tr. 170-78, 197). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 111-63). On May 3, 2012, Plaintiff appeared before ALJ Paul Jones with testimony being offered by Plaintiff and a vocational expert. (Tr. 29-86). In a written decision dated June 15, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 11-22. The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On February 25, 2006, Plaintiff participated in an MRI examination of his cervical spine the results of which revealed: (1) degenerative changes from C4-5 through C6-7 with spinal stenosis and disc bulges from C3-4 through C6-7; (2) narrowing of the bilateral neural foramina from C3-4 through C6-7. (Tr. 350-51).

X-rays of Plaintiff's cervical spine, taken on June 13, 2006, revealed "moderately severe degenerative changes of the cervical spine focused from C4-C6." (Tr. 668). On June 16, 2006, Plaintiff underwent "microsurgical debridement of the facets with rhizolysis" at C3-4, C4-5,

C5-6, and C6-7. (Tr. 653). On December 18, 2006, Plaintiff underwent a cervical laminotomy at C5-6. (Tr. 676-78).

On March 17, 2007, Plaintiff was transported to the hospital by the Michigan State Police after stating that he was "suicidal, that he could not live out the day without any intervention, that he wanted to die." (Tr. 703-10). Plaintiff responded to medication and was discharged on March 19, 2007 at which point his GAF score was rated as 55.[1] (Tr. 703-10).

On May 17, 2011, Plaintiff participated in a consultive examination conducted by Tim Strang, Ph.D. (Tr. 476-80). Plaintiff reported that he was unable to work due to Crohn's disease, anxiety, back problems, clostridia difficile, and colitis. (Tr. 476). Plaintiff reported that his "anxiety is very high, because I'm sick." (Tr. 476). Plaintiff further stated "I want to go back to work, but I can't." (Tr. 476). With respect to his activities, Plaintiff reported that "he sits on the couch watching television and is currently building a table for a friend." (Tr. 477). Plaintiff noted that "he works at short intervals" and further stated "I don't do much, I just don't feel like doing anything." (Tr. 477). With respect to Plaintiff's mental status, the doctor observed the following:

> Claimant was quite restless, up and down in his chair. Contact with reality appeared to be adequate and he did not exaggerate or enhance symptoms. Claimant's thoughts were scattered, tangential and circumstantial. He often lost track of where he was conversationally and asked me frequent questions such as "What was I talking about?" His articulation was fine, and speech was intelligible...Claimant's affect was a mixture of depression and anxiety.

(Tr. 478).

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

4

The results of a mental status examination were otherwise unremarkable. (Tr. 478-79). Plaintiff was diagnosed with dysthymic disorder and generalized anxiety disorder. (Tr. 479). Plaintiff's GAF score was rated as 51. (Tr. 479). Dr. Strang concluded:

> This 60-year-old individual is a highly anxious person who has difficulty with thought organization, secondary to the anxiety. He has a number of serious health problems that have impeded his ability to maintain acceptable attendance at work. He has deficits in immediate and recent memory, but was able to employ abstract thinking and demonstrate reasonable social judgment.

(Tr. 480).

On May 26, 2011, Plaintiff was examined by Jay Skaggs with Summit Pointe. (Tr. 498-509). Skaggs noted that:

> This started as an intake call and quickly progressed to more of a crisis call - Larry has pressurized speech, random thought patterns, flight of ideas, and is terrified of being considered crazy, or lazy. Really needed to be told that he was telling the truth, and that help was available. Presented as very high stressed almost to the point of being incoherent.
>
> Customer displays symptoms of an anxiety disorder AEB customer's difficulty controlling worry, restlessness, irritability, and sleep disturbance. Customer frequently became so agitated/tense during the assessment that he became incoherent. Customer also displays symptoms of a depressive disorder AEB customer's depressed mood, diminished interest in pleasurable activities, insomnia, fatigue, feelings of worthlessness, suicidal ideation, and difficulty concentrating. Customer disclosed that a great deal of his anxiety and depression stems from the loss of his job in mid 2010. Customer also has a number of health concerns including chronic back and neck pain, Crohn's disease, and colitis which are likely further complicating his mood.

(Tr. 508). Plaintiff was diagnosed with anxiety disorder and depressive disorder. (Tr. 505). His GAF score was rated as 37.[2] (Tr. 506).

On August 9, 2011, Plaintiff reported that "his mood has improved significantly" and that "the majority of his improvement can be attributed to his feeling physically well today." (Tr. 589). On August 24, 2011, Plaintiff reported that he "continues to experience symptoms of moderately severe anxiety related to his health." (Tr. 587). Treatment notes dated September 19, 2011, report Plaintiff's GAF score as 50. (Tr. 580). On October 14, 2011, Plaintiff reported that "he has been in a great deal of physical pain and that this continues to wear on his mood." (Tr. 575).

On December 13, 2011, Plaintiff was examined by Jay Skaggs. (Tr. 637-48). Plaintiff's mood was characterized as irritable, anxious, and fearful. (Tr. 642). Plaintiff's speech was characterized as rapid and pressured. (Tr. 642). Skaggs further observed that Plaintiff exhibited "flight of ideas." (Tr. 642). Plaintiff's GAF score was rated as 44. (Tr. 645).

Treatment notes dated December 22, 2011, indicate that Plaintiff "is in a surprisingly mellow mood, jokes with us a bit and says that he is still not sleeping well and has as much pain and depression as usual." (Tr. 615).

Treatment notes dated January 12, 2012, reveal the following:

> He had an episode last week where he became very angry at his therapist and left and was driving recklessly. It was considered to petition him for commitment, but he did call back and apologized, said he is doing well, said he did not intend self harm.

(Tr. 612).

---

[2] A GAF score of 37 indicates that the individual is experiencing "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV at 34.

On April 17, 2012, Dr. Miranda Makulski completed a report regarding Plaintiff's "ability to engage in work related activities." (Tr. 739-42). Dr. Makulski indicated that she had been treating Plaintiff for approximately six years. (Tr. 739). The doctor reported that Plaintiff suffers from abdominal pain, osteoarthritis of the neck and back, anxiety, and depression. (Tr. 739). The doctor reported that Plaintiff was not a malingerer and that his impairments were "reasonably consistent" with his symptoms and functional limitations. (Tr. 739-40). The doctor reported that one half of the time Plaintiff's "pain or other symptoms [would be] severe enough to impair [his] ability to remain on task in a competitive work situation." (Tr. 740). The doctor further reported that Plaintiff suffers from a "marked limitation (75%)" in his ability to deal with work stress. (Tr. 740).

The doctor reported that Plaintiff can frequently lift and carry less than 10 pounds, occasionally lift and carry 10 pounds, but can never lift and carry 20 pounds or more. (Tr. 741). The doctor reported that Plaintiff can continuously sit for more than two hours and can continuously stand for 60 minutes. (Tr. 740). The doctor reported that during and 8 hour working day, Plaintiff can sit and stand/walk for "at least 6 hours" each. (Tr. 740). The doctor reported that during an 8 hour workday, Plaintiff can use his hand and fingers 50% of the time to perform repetitive activities, but can use his arms to perform reaching activities only 10% of the time. (Tr. 741). Dr. Makulski concluded as follows:

> [Plaintiff's] anxiety and depression are significantly effecting his ability to complete a work day. His neck pain is worse than back pain so although sitting and standing are not as effected he has significant difficulty using his arms.

(Tr. 742).

7

On April 30, 2012, Jay Skaggs completed a form regarding Plaintiff's mental residual functional capacity. (Tr. 743-48). Skaggs reported that Plaintiff suffers from anxiety disorder, personality disorder, and chronic pain. (Tr. 743). Skaggs reported Plaintiff's then current GAF score as 35. (Tr. 743). Skaggs reported Plaintiff's symptoms as including the following: (1) anhedonia or pervasive loss of interest in almost all activities; (2) appetite disturbance with weight change; (3) decreased energy; (4) thoughts of suicide; (5) feelings of guilt or worthlessness; (6) mood disturbance; (7) difficulty thinking or concentrating; (8) persistent disturbances of mood or affect; (9) emotional withdrawal or isolation; (10) memory impairment; and (11) sleep disturbance. (Tr. 744). Skaggs also assessed Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation. (Tr. 745-46). Skaggs reported that Plaintiff experiences "extreme loss" in three areas, a "marked loss" in 10 areas, a "moderate loss" in six areas, and a "mild loss" in four areas. (Tr. 745-46). Skaggs reported that Plaintiff is not a malingerer and that his impairments are "reasonably consistent" with his symptoms and functional limitations. (Tr. 747). Skaggs also reported that Plaintiff would likely be absent from work "more than 4 days per month" as a result of his impairments and limitations. (Tr. 747).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from (1) affective disorder; (2) anxiety disorder; and (3) personality disorder, severe impairments that whether considered alone or in

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 13-17).

The ALJ next determined that Plaintiff retained the capacity to perform "a full range of work at all exertional levels, but is non-exertionally limited to simple, routine, and repetitive tasks." (Tr. 17). The ALJ found that Plaintiff could perform his past relevant work as a painter/sprayer, a job which the vocational expert testified was medium in exertion. (Tr. 68-70). The vocational expert further testified that even if Plaintiff could not perform his past relevant work, there existed in the state of Michigan approximately 31,900 jobs at the medium level of exertion which Plaintiff could perform. (Tr. 68-70). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.          **Evidence not Presented to the ALJ**

When appealing the ALJ's decision to the Appeals Council, Plaintiff submitted evidence regarding treatment he received well after the ALJ issued his decision. (Tr. 1056-72). It is not clear whether Plaintiff is relying on this evidence in support of his request for relief. Regardless, this Court cannot consider this evidence. *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148.

To establish good cause, the claimant must "demonstrate a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."

*Courter v. Commissioner of Social Security*, 479 Fed. Appx. 713, 725 (6th Cir., May 7, 2012). Moreover, the "mere fact that evidence was not in existence at the time of the ALJ's decision" does not satisfy the good cause standard. The Sixth Circuit "takes a harder line on the good cause test with respect to timing and thus requires that the claimant give a valid reason for his failure to obtain evidence prior to the hearing." *Id.* To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

Plaintiff has failed to request a remand so that this evidence can properly be considered. Likewise, Plaintiff has failed to argue that he satisfies the aforementioned standard to obtain such a remand. Plaintiff has, therefore, waived any argument that this matter be remanded for consideration of the evidence in question. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Bass*, 499 F.3d at 513 n.3 ("inadequate development" of an argument constitutes waiver of such); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived).

**II.      The ALJ's RFC Determination is not Supported by Substantial Evidence**

The ALJ concluded that Plaintiff retains the capacity to perform "a full range of work at all exertional levels" so long as such work is simple, routine, and repetitive. Plaintiff argues that the ALJ's RFC determination fails to sufficiently account for his physical and mental limitations.

With respect to Plaintiff's non-exertional limitations, the Court agrees with Plaintiff

that limiting him to simple, routine, and repetitive work simply fails to take into account the severity of his emotional impairments. For example, while the ALJ's RFC contains no limitation with respect to Plaintiff's ability to interact with others, the evidence of record more than supports some type of limitation in this regard.

As for Plaintiff's physical impairments, while the evidence does not support the conclusion that Plaintiff is precluded from performing any and all work activities, the conclusion that Plaintiff can perform work at all levels of exertion is likewise not supported by the record. Specifically, the conclusion that Plaintiff can perform heavy[4] or very heavy work[5] enjoys little (if any) support in the record. Objective medical testing revealed that Plaintiff experienced "moderately severe" degenerative changes in his cervical spine, including stenosis and bulging discs, which necessitated two separate surgical procedures. While Plaintiff's condition in this regard may not have further deteriorated post-surgery, there is nothing in the record to suggest that Plaintiff retains the physical ability to perform work at "all levels of exertion."

While Plaintiff's RFC contemplates the ability to perform heavy or very heavy work, the jobs the ALJ found Plaintiff could still perform, and which rendered him ineligible for benefits, were neither heavy nor very heavy in exertion. Thus, it could perhaps be argued that the ALJ simply overstated the extent of Plaintiff's limitations and that such should be considered harmless in light of the vocational expert's testimony. The Court rejects any such argument for several reasons. First, it not clear that Plaintiff retains the ability to even perform medium work. More importantly, the

---

[4] Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. 20 C.F.R. § 404.1567(d).

[5] Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. 20 C.F.R. § 404.1567(e).

12

Court is neither authorized or qualified to make such a factual finding in the first instance. Finally, such an argument also overlooks the deficiency in Plaintiff's RFC with respect to his non-exertional limitations.

In sum, because the ALJ's RFC determination is not supported by substantial evidence, the ALJ's subsequent determination that Plaintiff could either perform his past relevant work as a painter/sprayer or perform other medium work which exists in significant numbers is not supported by substantial evidence.

### III. The ALJ Failed to Properly Evaluate the Medical Evidence

As noted above, Plaintiff's therapist, Jay Skaggs, and Plaintiff's treating physician, Dr. Makulski reported that Plaintiff was impaired to an extent well beyond that recognized by the ALJ. Plaintiff asserts that he is entitled to relief because the ALJ failed to provide sufficient reasons for discounting these particular opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at

13

*2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source,

and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

### A. Jay Skaggs

As the ALJ properly recognized, because Skaggs is a therapist his opinion is not entitled to any particular deference. *See* 20 C.F.R. § 404.1513(d)(1). Nevertheless, the ALJ considered Skaggs' opinion and concluded that it was deserving of "very little" weight as it is not supported by the record. (Tr. 19). While Plaintiff suffers from greater non-exertional limitations than recognized by the ALJ, the extreme limitations articulated by Skaggs are not supported by the record. Accordingly, the Court finds that the ALJ's decision to discount Skaggs' opinion is supported by substantial evidence.

### B. Dr. Makulski

Dr. Makulski offered opinions regarding Plaintiff's exertional and non-exertional limitations. With respect to the doctor's opinions concerning Plaintiff's non-exertional limitations, the ALJ found that such were not supported by the record, including the doctor's contemporaneous treatment notes. This conclusion is supported by substantial evidence. The ALJ completely failed, however, to address Dr. Makulski's opinion that Plaintiff can frequently lift and carry less than 10 pounds, occasionally lift and carry 10 pounds, but can never lift and carry 20 pounds or more. This oversight cannot be ignored given that such an opinion is in direct conflict with the ALJ's conclusion

that Plaintiff can lift more than 100 pounds and can frequently lift 50 pounds or more. *See Wilson*, 378 F.3d at 544-47 (recognizing that violations of the treating physician rule are not harmless). The ALJ's failure clearly violates the principle articulated in *Wilson* and renders his decision legally deficient.

**IV.        The ALJ Properly Discounted Plaintiff's Subjective Allegations**

Plaintiff testified at the administrative hearing that he was impaired to an extent well beyond that recognized by the ALJ. (Tr. 33-68, 78-83). Plaintiff asserts that he is entitled to relief because the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, - - - Fed. Appx. - - -, 2013 WL 5496007 at *3 (6th Cir., Oct. 4, 2013) (citation omitted).

The ALJ found Plaintiff to not be entirely credible. The ALJ's assessment was based on the ground Plaintiff's allegations were inconsistent with the objective medical evidence and Plaintiff's reported activities. While the Court does not question that Plaintiff suffers from significant limitations, as the ALJ recognized, the record does not support the extreme degree of impairment and limitation which Plaintiff alleges. The Court concludes, therefore, that the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

### V.     Remand is Appropriate

For the reasons discussed above, the ALJ's decision does not comply with the relevant legal standards. Nevertheless, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision cannot be affirmed, there does not exist *compelling* evidence that Plaintiff is disabled. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The Court concludes, therefore, that the Commissioner's must be reversed for the reasons articulated herein and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: January 30, 2014

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge